# IN THE COURT OF APPEALS OF IOWA

No. 16-0556
Filed February 8, 2017

**JESSICA BRATTON,**
        Petitioner-Appellee,

**vs.**

**CHARLES M. MINNIX II,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Robert J. Blink,
Judge.

A father appeals the district court's custody determination.  **AFFIRMED.**

Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West
Des Moines, for appellant.

Danni J. Harris of Hope Law Firm, PLC, West Des Moines, for appellee.

Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**VOGEL, Presiding Judge.**

Charles Minnix appeals the district court's decree that placed the parties' children in Jessica Bratton's care. Charles asserts the best interests of the children require they be in his physical care. He asserts in recent years he has become concerned regarding the children's hygiene and their safety while in Jessica's care. Jessica asserts the district court was correct in placing the children in her care, and she requests an award of appellate attorney fees for defending the district court's decision on appeal.

**I. Background Facts and Proceedings.**

The parties are the parents of two children, ages eight and nine at the time of the custody trial, but the parties have never been married. At the time the children were born, the parties both struggled with substance abuse. As a result, the parties placed the older child with Jessica's mother, and the younger child, who was born premature, with Charles's mother. In 2008, after Jessica stopped using, she resumed caring for the older child. Jessica moved from Indiana to Iowa in 2010 with the older child, and eventually, she resumed caring for the younger child in 2011.[1]

Charles last used illegal substances in November 2013. He is married to Amanda, and the couple has one child together. Amanda has three other biological children from previous relationships, two of whom live with her and Charles in Indiana. Charles works evenings and nights as a truck driver, while Amanda stays at home to care for the children.

---

[1] Jessica has two other children. One of which, age twelve at the time of trial, was living with Jessica and the two children at issue in this case. The other child, age thirteen, lives with his father in Indiana.

Jessica works full time during the day in the Des Moines area, and lives with her boyfriend, who provides care for the children during the winter months when he is seasonally unemployed. Since her move to Iowa, Jessica has facilitated visitation between Charles and the children by transporting them to Indiana every six to eight weeks for the weekend. In addition, the children have spent the majority of their summer breaks with Charles in Indiana.

The paternity petition was filed in June 2015 in response to allegations made by the children that one of Jessica's other children was being abusive. Charles became aware of the allegations at the start of his summer visitation and initiated investigations, both in Indiana and Iowa, with the department of human services and law enforcement. Charles filed an emergency petition in Indiana, but he later dismissed that matter and consented to Iowa's jurisdiction after Jessica initiated this proceeding. In the temporary order, the court ordered the alleged perpetrator to have no contact with the children at issue.

In the court's decree placing the children in Jessica's physical care, the court noted that while the abuse allegations are concerning, there was insufficient proof that the abuse was the result of a failure of parental supervision by Jessica. The court noted the children have been doing well academically, socially, and physically for the past five years in Jessica's care. Jessica's sobriety is of longer duration than Charles's sobriety, and Charles's work schedule results in a greater portion of the child care obligations falling to his wife. The court also expressed concern due to the parties' testimony that there were incidents of physical abuse during their relationship. The court set a

visitation schedule for Charles and ordered the parties to meet halfway between their respective homes for visitation exchanges.

Charles appeals.

## II. Scope and Standard of Review.

Our review of the district court's decree regarding child custody is de novo. *McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010). We give weight to the factual findings of the district court, especially its determinations of credibility because of the court's ability to listen to and observe the parties and witnesses. *Id.* However, we are not bound by those findings. *Id.* Our overarching concern is the best interests of the children. *Id.*

## III. Physical care.

Charles asserts he has grown more concerned for the children's safety in recent years. He believes the lack of hygiene, the lack of dental care, and the reports of abuse at the hands of the children's half-sibling are the result of Jessica's negligence and indifference. Charles testified he believes the children do not bathe regularly and have been sent to the nurse's office at school because of long fingernails and head lice. He also believes Jessica dresses the children in ill-fitting clothing. He claims Jessica does not keep him informed of the children's school or health needs and does not tell medical providers he is the children's father so that he can access the children's records. He asserts he is better able to provide the children a stable and supportive home, and we should modify the physical care decree to place the children in his care.

In custody cases, our goal is to "place the child in the environment most likely to bring that child to healthy physical, mental, and social maturity." *Lambert*

*v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988) (citation omitted).  Factors to consider in awarding custody are contained in Iowa Code section 598.41(3) (2015) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), and we need not repeat them here.  *See* Iowa Code § 600B.40 (noting the factors listed in section 598.41(3) are to be considered when determining visitation and custody in a paternity action).

Upon our review of the record, we note only Charles's testimony supports a conclusion that the children are not maintaining proper hygiene or lack medical care while in Jessica's care.  An affidavit from the children's principal indicates the children come dressed and ready for school each day, they are well-behaved and come to school to learn, and they do well academically and socially.  The principal further reports Jessica is supportive of the children, their education, and the school.  The school nursing records reveals two episodes of lice in the children, three years apart, and on one occasion, one of the children needed his fingernails trimmed.  While medical providers should be informed as to Charles's status as the children's father, the documents in the record indicate the children regularly see their medical providers.  Finally, as the district court noted, the reports of abuse at the hands of a half-sibling are concerning; however, we agree there was no evidence Jessica's failure to supervise the children was the cause of any alleged abuse.  We also note the department of human services' investigation concluded the allegations were "not confirmed," and there is no information to indicate the police have taken action to file charges against the half-sibling.

Jessica has provided care for the children since achieving her sobriety in June 2008. Charles's parenting of the children since achieving his own sobriety as of November 2013 should be applauded, but the facts of the case do not support a finding that he can better minister to the children's emotional, social, moral, material, and educational needs. *See Winter*, 223 N.W.2d at 166. Jessica's efforts to provide transportation for the children so that they may maintain contact with Charles over the years, before any court order was entered, shows her ability to support Charles's relationship with the children. *See* Iowa Code § 598.41(3)(e). We affirm the district court's decree placing the children in Jessica's physical care.

**VI. Appellate Attorney Fees.**

Jessica requests an award of appellate attorney fees, asserting Charles earns significantly more than she does and she does not have the ability to pay to defend the district court's decision. "An award of attorney fees is not a matter of right, but rests within the court's discretion. In determining whether to award appellate attorney fees, we consider the parties' financial positions and whether the party making the request was obligated to defend the trial court's decision on appeal." *McKee*, 785 N.W.2d at 740. Upon our consideration of these factors, we award Jessica $2000 in appellate attorney fees. *See* Iowa Code § 600B.26 (authorizing the award of reasonable attorney fees in proceedings to determine custody or visitation).

**AFFIRMED.**